**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| LARRY FITZPATRICK, | ) Case No.: 2:07-CV-528 |
| | ) |
| Plaintiff, | ) **BRIEF IN SUPPORT OF MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| vs. | ) |
| | ) |
| CITY OF MONTGOMERY, | ) |
| | ) |
| Defendant | ) |

COMES NOW the City of Montgomery, by and through undersigned counsel, and in support of its Motion for Summary Judgment says as follows:

## PROCEDURAL HISTORY

Anthony Fitzpatrick was terminated from his employment with the Fleet Management Department of the City of Montgomery on February 8, 2006 for three separate incidents wherein he failed to properly install or re-install critical parts on city owned automobiles. (*Exhibit A, p. 4, Affidavit of Terry Gaddis).* Mr. Fitzpatrick was recommended for dismissal by his department head, a recommendation which he appealed to the Mayor's office. *(Exhibit A, p.8, Affidavit of Terry Gaddis).* An appeal hearing was held by the Mayor's executive assistant on February 1, 2006 regarding the same. *(Exhibit A, p. 6, Affidavit of Terry Gaddis).* After hearing from witnesses introduced by Mr. Fitzpatrick, the Mayor's Executive Assistant recommended that the Recommendation for Dismissal be upheld, and Fitzpatrick was terminated by the Mayor on February 8, 2006 for failure to properly install the rear brake caliper on Police vehicle 6210-2950; failure to install the hat-shaped seal on the fuel tank of Police vehicle 2610-2986; failure to tighten the wheel lug nuts when replacing the wheel on vehicle 5800-2484, his previous record having been considered. *(Exhibit A, p. 4).*

Mr. Fitzpatrick appealed his termination to the Montgomery City County Personnel Board which, after another hearing wherein testimony was taken and exhibits offered, upheld the Mayor's decision to terminate Mr. Fitzpatrick.

On March 9, 2006, Fitzpatrick filed a charge of discrimination with the EEOC. The instant lawsuit was filed on June 14, 2007 alleging race-based discrimination under 42 U.S.C. §§1981 and 2000, and retaliation prohibited by 42 U.S.C. §2000. (Doc. No. 1).

## FACTS

Larry Fitzpatrick was employed as an auto mechanic in the Fleet Management Department of the City of Montgomery. *(Exhibit A, p. 1)*. The plaintiff's employment was terminated for having committed three separate acts of negligent maintenance within a twelve month period. *(Exhibit A, p. 1,)*. On or about November 8, 2004, Fitzpatrick was charged with performing routine maintenance on a city van. *(Exhibit A, p. 1)*. When he finished the job, the van was parked on the ready line for pick-up. When driven off, one of the wheels began to wobble, almost coming off. *(Exhibit A, p. 1-2)*. Upon inspection, it appeared that the wheel lug nuts were missing and had not been replaced. *(Exhibit A, p.2)*.

During the second week of December of 2004, the Plaintiff was assigned to replace a faulty fuel pump on a Police Department vehicle. *(Exhibit A, p. 2)*. That vehicle was returned to the garage several days after this work was performed because fuel was leaking onto the ground. *(Exhibit A, p. 2)*. Upon inspection, it was found that a critical hat-shaped seal had not been installed under the fuel pump. *(Exhibit A, p. 2)*. Consequently, fuel was leaking out of the gas tank in very close proximity to the exhaust pipe. *(Exhibit A, p. 2)*.

On October 17, 2005, Fitzpatrick was assigned to perform brake work on a police department patrol car. *(Exhibit A, p. 2)*. On October 25, 2005 that vehicle was returned to the

garage by the police department because the left, rear brake caliper had come off the rotor and was hanging loose under the car. *(Exhibit A, p. 2)*. Upon inspection, it was determined that the two bolts meant to secure the caliper to the wheel assembly had not been installed. *(Exhibit A, p. 2)*. More specifically, metal shavings generated when the caliper worked itself loose were observed inside the holes in the caliper meant to accept the subject bolts. *(Exhibit A, p. 2)*.

## ARGUMENT

### I.    Framework

While the plaintiff makes a claim for disparate treatment under both Title VII and §1981, the claims are both derived from the same set of circumstances and alleged actions of the employer. Both Title VII and a race-based disparate treatment claim under §1981 carry "the same requirements of proof and present the same analytical framework." Washington v. Kroger Co., 218 Fed.Appx. 822, 824 (11th Cir.2007); Standard v. A.B.E.L. Services, 161 F.3d 1318, 1330 (11th Cir.1998). In addition to his disparate treatment claims, Plaintiff makes a claim for retaliation. Because all of these claims are alleged as circumstantial, the same framework applies for all.

There are two methods of proving Plaintiff's claims, whether they be for disparate treatment or retaliation. They may either be proven by direct evidence or by circumstantial evidence. Nowhere in the plaintiff's complaint does he allege any direct evidence of either the alleged disparate treatment or retaliation. To the contrary, Plaintiff alleges that he was treated differently than members of another racial classification; namely white males. (Doc. No. 1). The claims, therefore, must be evaluated under the McDonnell Douglas burden-shifting framework.

"In evaluating disparate treatment [and retaliation] claims supported by circumstantial evidence, courts within this circuit and elsewhere rely on the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Smith v. City of Montgomery, ___ F.Supp.2d ____, 2007 WL 1266867, 6 (M.D.Ala.2007). *See*

Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir.1997) (*retaliation claims analyzed under the same framework*).

## II.    Disparate Treatment - Comparator

In Count I of the Complaint, Plaintiff, a black male, alleges that he was treated disparately from other, similarly situated white males. (Doc. No. 1). More specifically, he names Johnny Ray Smith as his comparator. (Doc. No. 1).

"A plaintiff establishes a prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir.2004); McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. It is undisputed that Fitzpatrick is a member of a protected class, and that he was subjected to an adverse employment action in his termination. Johnny Ray Smith and Larry Fitzpatrick are not, however, similarly situated.

As discussed above, the plaintiff's employment was terminated after he either failed to install a critical part or improperly installed a critical part on at least three separate occasions within a twelve-month period. Each of these failures created a significant safety hazard for both the vehicle operators and the public at large. Johnny Ray Smith, on the other hand, has never failed to install a part correctly or neglected to install a part at all. And he has never been found to have otherwise performed his work in such a way that a safety hazard was created.

Plaintiff has also alleged that he was treated disparately when he, and not Johnny Ray Smith was required to go to counseling after a verbal altercation between him and Mr. Smith. To the contrary, Johnny Ray Smith was given the same requirement. Smith was directed to undergo counseling at the City's expense just as Fitzpatrick was. He too was directed, by way of the attached letter, to attend counseling, and he was told that failure to attend would result in

disciplinary action against him. *(Exhibit A, p.23)*.  Both Fitzpatrick and Smith were ordered to take a drug test and to go to one session of counseling.  Moreover, as is shown in the attached reprimands, both received a Form 30, Employee Counseling Record.  *(Exhibit A, p. 24-26, Employee Counseling Records for Johnny Ray Smith & Larry Fitzpatrick)*.  Johnny Ray Smith signed his counseling form, but Fitzpatrick refused.  *(Exhibit A, p.23-26)*.

### III.    Legitimate Non-Discriminatory Reason

While the elements necessary to establish a prima facie case differ for disparate treatment and retaliation, once the plaintiff has satisfied the respective elements, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse action. McDonnell Douglas, 411 U.S. at 792 (1973).  If the employer satisfies its burden, the burden then shifts back to the plaintiff to show that the proffered reason for the adverse employment action is pretext. McDonnell Douglas, 411 U.S. at 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-255, 101 S.Ct. at 1094 (1981); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir.2004).

The plaintiff's employment was terminated for having committed three separate acts of negligent maintenance within a twelve month period.   On or about November 8, 2004, Fitzpatrick was charged with performing routine maintenance on a city van.  When he finished and the van was driven off, one of the wheels began to wobble, almost coming off.  Upon inspection, it appeared that the wheel lug nuts had not been replaced.

During the second week of December of 2004, the Plaintiff was assigned to replace a faulty fuel pump on a Police Department vehicle.  That vehicle was returned to the garage several days after this work was performed because fuel was leaking onto the ground.  Upon inspection, it was found that a critical hat-shaped seal had not been installed under the fuel pump.  Consequently, fuel was leaking out of the gas tank in very close proximity to the exhaust pipe.

On October 17, 2005, Fitzpatrick was assigned to perform brake work on a police department patrol car, vehicle number 6210-2950.  On October 25, 2005 that vehicle was returned to the garage by the police department because the left, rear brake caliper had come off the rotor and was hanging loose under the car.  Upon inspection, it was determined that the two bolts meant to secure the caliper to the wheel assembly had not been installed.  More specifically, metal shavings generated when the caliper worked itself loose were observed inside the holes in the caliper meant to accept the subject bolts.

Each of these instances of negligent maintenance posed serious risks of injury, both to the city employees operating the vehicles and to the public, not to mention the potential property damage caused by these lapses.  The failure to install lug nuts created a serious risk that the wheel would come off during operation and cause a potentially serious accident.  Likewise, the loss of the brake caliper not only caused the loss of braking ability on one wheel of a patrol car which is designed for the ability to be driven at excessive rates of speed in an emergency, but it threatened the loss of *all* braking ability.  When the vehicle was returned, the caliper was hanging by the hydraulic hose.  Had the caliper pulled loose from the hose, the loss of hydraulic pressure would have rendered the vehicle's brakes inoperative.

The failure to replace the hat seal under the fuel pump exposed raw gasoline to an area of the vehicle where it could easily have come into contact with a hot exhaust pipe, creating a substantial risk of fire.

Simply put, the failures on the part of Larry Fitzpatrick put lives in danger.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex Corp., 477 U.S. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed.R.Civ.P. 56(c).

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Yannella v. City of Dothan, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

**CONCLUSION**

The circumstances surrounding Fitzpatrick's termination bear little resemblance to anything about Johnny Ray Smith's employment or treatment. Simply put, Johnny Ray Smith has not performed his work in such a way as to create a safety risk to City employees and the public. Moreover, Fitzpatrick has done so repeatedly. He has shown a pattern of negligence which the City of Montgomery simply cannot in good conscience allow to persist. Doing so would be tantamount to negligent supervision on the part of the City itself.

Respectfully submitted,

___/s/ Wallace D. Mills___
Wallace D. Mills (MIL 090)
Attorney for City of Montgomery

OF COUNSEL:
City of Montgomery Attorney's Office
103 North Perry St., Rm. 200
Montgomery, AL 36104
(334) 241-2050

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of April, 2008, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Joseph Charles Guillot, Esq.
McPhillips Shinbaum LLP
P.O. Box 64
Montgomery, AL 36101-0064

and I hereby certify that I have also mailed by United States Postal Service the document to the above-named non-CM/ECF participants:

/s/ Wallace D. Mills
OF COUNSEL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

LARRY FITZPATRICK,         )   Case No.: 2:07-CV-528
     Plaintiff,         )
                     )   **AFFIDAVIT OF TERRY GADDIS**
  vs.               )
                     )
CITY OF MONTGOMERY,    )
     Defendant.       )
                     )
                     )
                     )
                     )
                     )

STATE OF ALABAMA

COUNTY OF MONTGOMERY

     In person appeared before the undersigned officer, duly authorized to administer oaths, Terry Gaddis, who, after being duly sworn, states under oath as follows:

     1.     I am the Director of Fleet Management for the city of Montgomery and have personal knowledge of the facts set forth in this affidavit. I am an adult resident citizen of the state of Alabama and am competent to testify to the matters set forth herein.

     2.     Larry Fitzpatrick was employed as an auto mechanic in the Fleet Management Department of the City of Montgomery. Mr. Fitzpatrick's employment was terminated for having committed three separate acts of negligent maintenance within a twelve month period.

     3.     On or about November 8, 2004, Mr. Fitzpatrick was charged with performing routine maintenance on a city van. When he finished the job, the van was parked on the ready line for pick-up. When driven off, one of the wheels began to wobble, almost coming off. Upon inspection, it appeared that the wheel lug nuts had not been replaced.

4.     During the second week of December of 2004, Mr. Fitzpatrick was assigned to replace a faulty fuel pump on a Police Department vehicle. That vehicle was returned to the garage several days after this work was performed because fuel was leaking onto the ground. Upon inspection, it was found that a critical hat-shaped seal had not been installed between the fuel pump and the gas tank. Consequently, fuel was leaking out of the gas tank in very close proximity to the exhaust pipe.

5.     On October 17, 2005, Fitzpatrick was assigned to perform brake work on a police department patrol car. October 25, 2005, that vehicle was returned to the garage by the police department because the left, rear brake caliper had come off the rotor and was hanging loose under the car. Upon inspection, it was determined that the two bolts meant to secure the caliper to the wheel assembly had not been installed. More specifically, metal shavings generated when the caliper worked itself loose were observed inside the holes in the caliper meant to accept the subject bolts.

6.     Attached hereto are records from my departmental files. Each of these documents was either made by me or under my supervision at or near the time of the events set out therein. They were made in the ordinary course of business, and they have been kept by me in the ordinary course of business. I hereby incorporate the statements made in those documents into this affidavit by reference as if they were fully set out herein, and swear and affirm that the statements made were made as they are represented therein.

7.     Further, the affiant saith not.

Terry Gaddis

STATE OF ALABAMA

COUNTY OF MONTGOMERY

I, the undersigned notary public in and for said county in said state, hereby certify that Terry Gaddis, whose name is signed to the foregoing affidavit, and who is known to me, after being fully informed of the contents of the instrument, signed and executed the same voluntarily after first being duly sworn by me on the date set forth below.

GIVEN under my hand and official seal, this 26th day of March, 2008.

NOTARY PUBLIC

My Commission Expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 23, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS

3

000 04

# MEMORANDUM

TO:         Terry H. Gaddis
            Director of Fleet Maintenance

FROM:       Michael S. Briddell
            Executive Assistant to the Mayor

DATE:       February 8, 2006

RE:         RECOMMENDATION OF TERMINATION


It is the Mayor's decision to terminate Mr. Larry Fitzpatrick from employment with the City of Montgomery as stated in your Recommendation for Disciplinary Action dated January 13, 2006.  Please prepare the necessary personnel forms and forward them to this office for approval.

Further insure that all the City personnel rules are followed.


APPROVED:


Bobby N. Bright
Mayor

MSB/wsf

PER FORM #36
Revised 1/2004

## NOTIFICATION OF <u>DISMISSAL</u> / DEMOTION

Certified Mail
Return Receipt Requested

Date: **2/8/06**

Larry Fitzpatrick
(Employee's Name)

BY HAND DELIVERY
(Street Address)

(City, State, Zip)

This is to notify you that as of this date, you are herewith <u>dismissed</u>/demoted from employment as a(n)

| Auto Mechanic | by the | Fleet Maintenance |
|---|---|---|
| (Job Title) | | (Department) |

of        City of Montgomery

(City of Montgomery, Montgomery County, Montgomery Housing Authority, Montgomery Regional Airport Authority)

The reason(s) for this <u>dismissal</u>/demotion is (are) (list all charges - attach additional sheets as required):

Failure to property install the rear brake caliper on Police vehicle 6210-2950; failure to install the hat-shaped seal on the fuel tank of Police vehicle 6210-2986; and failure to tighten the wheel lug nuts when replacing the wheel on vehicle 5800-2484.

Previous record considered (list all previous actions considered - attach additional sheets as required):

## You are entitled to a hearing before the Personnel Board on the above charges.

You may answer these charges within three (3) days from the date of receipt of the notification of dismissal/demotion, by responding in writing to your department head and providing a copy to the personnel Director, who is located at 27 Madison Avenue. Within ten (10) days from the time for filing your answer, you must file a written request with the Personnel Director if you desire a hearing before the Personnel Board. You may be represented by legal counsel at this hearing if you desire and you shall have the right to answer these charges and to present any statements, witnesses, evidence in your behalf and to cross-examine any other witnesses presented. Consult the Montgomery City-County Personnel Department, 27 Madison Avenue, relative to any other rights you have under the Merit System Law.

I hereby certify that this document was given to the employee or placed in the I United States mail on

| Month | Day | Year |
|---|---|---|

Appointing Authority

| Employee | Mayor |
|---|---|
| | Title |

PLR FORM 54
Revised 10/04

**000006**

# APPOINTING AUTHORITY'S RECORD OF DISCIPLINARY HEARING

Employee: _____ Larry Fitzpatrick _____

Department: _____ Fleet Maintenance _____

Department Head: _____ Terry H. Gaddis _____

Date: _____ February 1, 2006 _____    Time: _____ 9:00 a.m. _____

Employee Represented by: _____ Joseph C. Guillot _____

Employee's Witnesses:

> Rodney Hardy, Donald White, Robert Shuford, and Thomas McCloud

Employee's Explanations or Defenses *(attach additional sheets as required)*:

> SEE ATTACHED

Action:

> It is the Mayor's decision to terminate Mr. Larry Fitzpatrick from employment with the City of Montgomery.

Heard before me _____ February 1, 2006 _____
                      month            day              year

_Michael J Bricklall_
               Appointing Authority

The hearing was convened at 9:00 a.m. Mr. Larry Fitzpatrick was present. Also present were Terry Gaddis, Director of Fleet Maintenance; Mr. Eugene Knox, Assistant Director; Mr. Royce Albright, Department Superintendent; Mr. Joe Guillot, Attorney for Mr. Fitzpatrick; Mr. Michael Boyle, City Legal Department; Mr. Michael S. Briddell, Mayor's office and presiding officer, and Mrs. Wanda Fox, recording secretary. Mr. Briddell stated this hearing was being held to give Mr. Fitzpatrick an opportunity to defend himself of the charges. He informed Mr. Fitzpatrick that if he was suspended in excess of thirty (30) days or more, demoted or terminated from employment, he had the right to appeal to the City-County Personnel Department within ten (10) days of the notification. Mr. Fitzpatrick stated he was a good mechanic and had 15 years of experience. He stated he did not do anything to the equipment in question and he felt his work had been sabotaged because other mechanics had experienced the same thing. Mr. Gaddis, Mr. Knox and Mr. Albright stated they had never received a complaint of there being any type of sabotage and if they had received it, they would have dealt with the situation by termination. Mr. Fitzpatrick emphasized that all the equipment in question was in proper working condition after he had completed the work order assigned for the particular vehicle.

PER FORM 32
Revised 10/04

**000008**

## RECOMMENDATION FOR DISCIPLINARY ACTION

Employee. Larry Fitzpatrick _____

Address: ███████████████████████ _____

Date:   1/13/06 _____

You are herewith notified that I am recommending that you be:

☐ Suspended for _____ days

☒ Dismissed

☐ Demoted from _____ to _____

The reasons for this recommendation are: (List all charges - attach additional sheets as required)

See Attached Sheets

> See Attached.

Previous Record Considered (Chronological list of prior offenses and action taken)

See Attached Sheets

> See Attached.

☒   Transcripts of hearing attached

A hearing will be set <u>by</u> the Appointing Authority to consider this recommendation and the charges. You will be given the opportunity to respond to the recommendation and these charges at this hearing. You will be notified in writing of the hearing date and your rights at said hearing.

_____
~~Supervisor~~/Department Head

I hereby certify that this document was given to the employee ~~or placed in the United States mail~~ on

Jan    13,    2006
month    day    year

_____
~~Supervisor~~/ Department Head

_____
Witness

Recommendation for Disciplinary Action for Larry Fitzpatrick

I have carefully reviewed the witness statements which you provided to me on December 19, 2005, rather than on the original deadline of December 16, 2005.

After this review, I have concluded that the statements do not provide any factual evidence as I requested (i.e. who, what, when or where). The statements merely indicate what each individual thinks or suspects is happening. You have provided me with nothing that proves beyond a shadow of doubt your claim that some person or persons are sabotaging your completed work on vehicles.

I have given you ample time and numerous chances to provide me with any type of factual evidence regarding your contentions that your work is being sabotaged.

After considering the severity and possible consequences of your failure to properly install the rear brake caliper on Police vehicle 6210-2950 as stated in the original charges, coupled with the previous maintenance malpractice actions of November 8, 2004 (failure to install the hat-shaped seal on the fuel tank of Police vehicle 6210-2986) and of the second week of December, 2004 (failure to tighten the wheel lug nuts when replacing the wheel on vehicle 5800-2484, causing the wheel to become loose when the vehicle was operated on the City Lot), any of which could easily have resulted in major damage to City property or worse, serious personal injury/death and your past disciplinary record, I am recommending your termination from employment with the Fleet Management Department and the City of Montgomery.


_____          _____
Terry H. Gaddis, Director                                  Date
Fleet Management Department

## PREVIOUS RECORD CONSIDERED FOR LARRY G. FITZPATRICK

### Derogatory Information:

| | |
|---|---|
| 25 October 2004- | Verbal Counseling for inappropriate behavior during incident on City Lot and for insubordination. |
| 29 October 2002- | Five day suspension for failure to begin work immediately after clocking in for duty on or about 18 October 2002, and also on the same day, insubordinate behavior toward his shop superintendent. |
| 4 February 2000 – | Verbal Reprimand by the Director per the Shop Forman's request for failure to give adequate notice per Departmental Operating Instruction #6 for requesting leave to attend son's ball game. |
| 9 April 1999 – | 45-day suspension without pay for 1st violation of the City's Drug Policy (testing positive for an illegal drug, marijuana, as a result of a work related injury by a urine drug screen). |
| 11 March 1999 – | Verbal Counseling by the Director for failure to clock-out when leaving work on 10 March 1999 as per Departmental Operating Instruction #8. |
| 3 October 1996 – | Letter of Reprimand for failure to call in prior to his shift start time to state he would be late for work. |
| 13 October 1995 – | Letter of Counseling for inappropriate conduct in the workplace. |
| 28 September 1995 – | Letter of Counseling for excessive unscheduled absenteeism from work. |
| 19 October 1994 – | Letter of Reprimand for unauthorized use of a City vehicle. |
| 24 January 1994 – | Letter of Reprimand for failure to clock out at the end of his duty shift. |
| 18 March 1991 – | Letter of Reprimand for failure to clock out at the end of his duty shift. |

### Achievement Information

| | |
|---|---|
| 19 October 2005- | Carquest Training on Enhanced OBD-II Using Mode $06 |
| 24 August 2005- | Carquest Training on Developing Diagnostic Strategies for OBD-II No Starts |

| | |
|---|---|
| 10 December 2003- | Carquest Training on Automatic Transmission Operation |
| 23 February 1999 – | Carquest training on Automotive Electronic Climate Control |
| 1 December 1998 – | Carquest training on GM Engine Management |
| 29 February 1996 – | OEM training on Automotive Heating and Air Conditioning |
| 8 February 1996 – | Letter of Commendation for work of rebuilding the Police Department's floor dolly |
| 29 July 1994 – | Caterpillar Diesel Engine Training |
| 28 December 1993 – | MACS Automotive Air Conditioning Training |

## STATEMENT BY ROYCE ALBRIGHT, SUPERINTENDENT, AUTO LIGHT EQUIPMENT DIVISION, CONCERNING INSPECTION AND REPAIRS ON VEHICLE 6210-2950

On Friday morning, October 21, 2005, vehicle 6210-2950 was in line for shop maintenance when I did my early morning inventory at about 6:00 a.m. The note left with the vehicle said something was hanging from the rear end of the car and requested that we check all brake attaching hardware.

I wrote a work order at 6:47 a.m. to accomplish the repair/inspection and reprinted the last brake maintenance and parts usage from October 17, 2005. I held the work order while planning to have someone investigate the problem.

Around 8:30 a.m. that same morning, I saw Robert Shuford, Master Mechanic, and Larry Fitzpatrick working on 6210-2950 while it was on the alignment rack. My work order was still on my desk along with the note that the officer had left.

I looked at the vehicle with Shuford and Fitzpatrick. The left rear wheel had been removed but nothing more had been done. I asked where the attaching bolts were for the brake caliper (the part that was hanging down that the officer saw). Neither Shuford nor Fitzpatrick knew where the bolts were, but they told me they had not removed them. I told them to stop what they were doing and I told Fitzpatrick to collect his tools, move away from the job, and not to touch anything more on the vehicle.

I then went to Mr. Eugene Knox, Assistant Director of Fleet Management, and asked him to please look at the problem with me. I showed him the vehicle and the brake problem. He was visibly upset while we discussed how the brakes came off the rear wheel. We both looked at the attaching parts and concluded that no attaching bolts had been installed. I also told Mr. Knox that since I had been accused of mistreating both Shuford and Fitzpatrick, that I would like to know what he wanted me to do. I told Mr. Knox what I had done so far and he agreed with my actions so far.

I then instructed Mr. Kenneth Smith, another of my mechanics, as his work area is next to Fitzpatrick's, to check 6210-2958 over very carefully and to make sure all brake hardware was correctly installed and properly torqued. I also directed Smith to replace all brake hoses, calipers, pads, hardware and the left rear wheel and tire. I also instructed Smith to save all the damaged parts from the left rear including the wheel and tire assembly.

Very shortly after talking with Smith, Mr. Knox called me and instructed me to take Fitzpatrick to City Hall for a drug screen. I asked if Shuford could do that and Mr. Knox agreed. I then directed Shuford to do what Mr. Knox had directed. Shuford and Fitzpatrick left the building not more than 10 minutes later.

While Shuford and Fitzpatrick were gone to City Hall, I asked Mr. Gaddis, Director of Fleet Management, if he was aware of the problem. (He had been out of the office earlier

in the morning). He said he was and I left his office since he had several phone calls to make. Before Shuford and Fitzpatrick returned, Mr. Gaddis came to my shop office and handed me a short memo and directed me to read it to Fitzpatrick. The memo, a copy of which is attached, directed me to forbid Fitzpatrick from working on any equipment and reassigned him to Mr. Knox until this matter could be resolved.

_____

Royce Albright

Attachments:
Job Order #371560 Reprinted
Job Order #371222 Summary
Director's Memo Dated October 21, 2005

## STATEMENT BY EUGENE KNOX, JR., ASSISTANT DIRECTOR, FLEET MANAGEMENT, CONCERNING INSPECTION AND REPAIRS ON VEHICLE 6210-2950

On Friday morning October 21, 2005, at approximately 8:15 a.m., Mr. Royce Albright, Superintendent of the Auto Light Division, came to my office and asked me to look at vehicle 6210-2950 because of a brake problem.  I saw that the right rear brake caliper was hanging loose.  It was indicated that the work was performed by Mr. Larry Fitzpatrick

Later after inspecting the vehicle we found that the caliper was loose on the vehicle Mr. Fitzpatrick had been working on.  This was reported to Mr. Terry Gaddis, Director, Fleet Management.

I was asked to perform an investigation by Mr. Albright into this matter.

Eugene Knox, Jr.

1

## MEMORANDUM

*J: M. Gaddis*
*Fleet Management Director*

**TO**       : Captain G.D. Hicks

**FROM**   : Lieutenant B.M. Rigsby

**DATE**    : 10/21/05

**SUBJECT**:  Vehicle 2950's Brakes

Sir, on Thursday, 10/20/05 at approximately 2200 hours, Officer B.R. Floyd #1280 drove patrol vehicle #2950 to the rear of headquarters. He advised that something was dragging under the rear of the vehicle. Further investigation revealed that the left rear brake caliper had disengaged from the brake hub assembly and was dragging on the ground by the rubber hydraulic brake line. I removed the tire and determined that the bolts that are used to secure the caliper were not in the stud holes. If the bolts had broken off, there would still be a part of the bolt left in the assembly. Pof. Floyd advised me that he had picked up his vehicle from the ready line on Monday, 10/17/05. It had been in the shop to repair squealing brakes. Pictures were taken prior to transporting the vehicle to the control center.

I contacted Mr. Albright at the city garage today at approximately 1450 hours in regards to this situation. He advised me that he was aware of the vehicle, and that he had already started an internal investigation. He feels that the retaining bolts were never placed back into the caliper assembly after being worked on.

LT. _____ 447
Lieutenant B.M. Rigsby #447

```
repared: 10/24/05 10:47:24      Job Order Number 371560
rogram: FM301L                                              **REPRINTED**
ITY SHOPS DEPARTMENT                      Job number:      1

quip./Reference . . . :  2950 / 6210-2950   2002 FO CROWN VIC P71
 2002 FORD MOTOR CO. CROWN VIC P71 POLICE PACKAGE B&W
ngine size . . . . :      4.6 LI
epartment . . . . . :  062-010 POLICE DEPARTMENT
IN . . . . . . . . :  2FAFP71W62X120431                  Job order status:
umber of jobs . . . :   1                                   * O P E N *
riority . . . . . . :   1                      Opened by : ROYCE W ALBRIGH
quipment warranty . :  12/17/04   36000  Date/Time scheduled :  0/00/00
 Engine . . . . . . :  12/17/04   36000  Date/Time removed . :  0/00/00
 Transmission . . . :  12/17/04   36000     Returned  . . . . :  ___:___
urrent meter . . . :  105692            Est. Service Time . :
icense tag number . :  38008            Meter reading . . . :   105692 MI
ront tire: P225/60R16                   Rear tire: P225/60R16

ob status: * O P E N *      J O B   I N F O
       Work class/Reason for WK                  Time waiting  Assigned
ob #   System/Problem desc              Sys/Act   Parts Labor  employee

  1  NON-SCHEDULED / DRIVER COMPLAINT  _____    .00   .00        0
     2100 CHECK BRAKE HARDWARE FOR SECURITY AND PROPER OPERA
     TION

                         L A B O R
ob #    Date    Start   End  OT Hrs  Action taken               Employee
```

```
rogram: FM115L                      Job Order Summary                    Page    1
ITY SHOPS DEPARTMENT
                         Job order number:    371222                   000017
                            Job number:      1

  Opened by:   RAYMOND L THOMAS
  Date/time:   10/17/05   6:03                        Job order status:
  Equipment:   2950                                     CLOSED JOB ORDER*
  Reference:   6210-2950                  Date/time/Opened: 10/17/05   6:03
 Description:  POLICE PACKAGE B&W        Removed from Service:  0/00/00
  Department:  062-010 POLICE DEPARTMENT     Repair Scheduled:  0/00/00
                                         Est. Return to Service:  0/00/00
eter reading:   105447  MILE            Act. Return to Service: 10/17/05 11:37
   Location:  AUTO/LIGHT TRUCK       Out of Service Time (hrs.):        5.57
  Work class:    3   NON-SCHEDULED
Rsn for work:   04   DRIVER COMPLAINT
    Priority:  1
ys. reported:  2100   BRAKES - MAJOR & MINOR
  Sys. actual:  2158   BRAKE PADS
Action taken:    20   REMOVED & REPLACED
               CK. BRAKE SQUEAL
```

```
abor:  *=Indirect
                       Act. --Time---  ------Regular------  -----Overtime-----      Total
  Date   Employee      tak on    off    Hours   Rate   Hours   Rate              cost


0/17/05 LARRY G FITZPATRI20 6:30 10:15    3.75  35.00    .00  52.50    131.25
                 Total labor:             3.75          .00           131.25
```

```
arts:                                                Extended             Total
  Date  Loc   Part number      Quantity              cost       Markup    cost


0/17/05 AP  1    9   00198       2.00      76.4500              .00      76.45
            54027 REAR ROTOR 96-02 C/VIC
0/17/05 AP  1    9   00199       1.00      16.0800              .00      16.08
            BS701 EMERGENCY SHOES FORD C/V
0/17/05 AP  1    9   00288       1.00      36.2000              .00      36.20
            MX674A THERMO QUIET 98-02 C.VIC
0/17/05 AP  1    9   00291       1.00      90.9500              .00      90.95
            18A1074 SLOTTED LEFT FRONT ROTOR
0/17/05 AP  1    9   00292       1.00      90.9500              .00      90.95
            18A1075 SLOTTED RIGHT FRONT ROTOR
0/19/05 N   AAA 12            1.00      37.7400              .00      37.74
            MX748 FRONT PADS INV108778
                                                       Total parts:    348.37


                                               Total charge     479.62
```



000019





000020

000021



000022





# City of Montgomery, Alabama

**000023**

February 9, 2005

Johnny Ray Smith, Employee No. 360

Dear Mr. Smith,

Due to the alleged comments you made on the evening of January 20, 2005, to another department employee concerning your reason for not coming to work on Friday, January 21, 2005 because you might attempt to do bodily harm to another department employee, I am directing you to attend a counseling session with Cathy Bolin Jones, a counselor with the City of Montgomery's Employee Assistance Program.

You are scheduled for an appointment with her on February 18, 2005, at 11:00 a.m. Her office is located at 419 Interstate Park Drive.

This is mandatory counseling and your failure to attend will result in disciplinary action against you.

Sincerely,

Terry H. Gaddis, Director
Fleet Maintenance Department
City of Montgomery

THG/mg

PER FORM 30
Revised 10/31/03

## EMPLOYEE COUNSELING RECORD

EMPLOYEE: *JOHNNY RAY SMITH*          POSITION: *AUTO MECHANIC*

SUPERVISOR: *ROYCE ALBRIGHT*          DEPT: *FLEET MANAGEMENT*

DATE OF COUNSELING: *10/25/04*

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information dates and times.)

> *INAPPROPRIATE BEHAVIOR DURING PARKING LOT*
> *INCIDENT (SEE ATTACHMENTS)*
>
> *DRUG TEST ADMINISTERED — RESULTS NEGATIVE*

Employee's response:

> *NONE*

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

> *I WARNED EMPLOYEE THAT THIS TYPE OF BEHAVIOR*
> *IS UNACCEPTABLE AND WILL NOT BE TOLERATED.*
> *FUTURE OCCURRENCES WILL BE MORE HARSHLY DEALT WITH*

*Royce W. Albright* _____      *10/25/04*
      Supervisor                          Date

My signature indicates that the above matters were discussed with me and that I received a copy of this form.

_____      *10/25/04*
    Employee Signature                    Date

This will certify that the employee was offered a copy of this form, but refused to sign the Employee Counseling Record.

_____          _____
Supervisor Signature                      Employee Name

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER FORM 30
Revised 10/31/03

## EMPLOYEE COUNSELING RECORD

EMPLOYEE: _LARRY FITZPATRICK_     POSITION: _AUTO MECHANIC_

SUPERVISOR: _ROYCE ALBRIGHT_     DEPT: _FLEET MANAGEMENT_

DATE OF COUNSELING: _10/25/04_

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information dates and times.)

DURING MY INVESTIGATION OF A PARKING LOT INCIDENT
MR. FITZPATRICK REFUSED TO ANSWER MY QUESTIONS
AND REPEATEDLY TOLD ME IT WAS "NONE OF YOUR
BUSINESS" AND WALKED AWAY FROM ME.
INSUBORDINATE BEHAVIOR.

Employee's response:

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

THIS BEHAVIOR IS TOTALLY UNACCEPTABLE AND WILL
NOT BE TOLERATED. FUTURE OCCURRENCES WILL BE
DEALT WITH MORE HARSHLY.

_____     _10/25/04_
Supervisor                       Date

My signature indicates that the above matters were discussed with me and that I received a copy of this form.

_____     _____
Employee Signature               Date

This will certify that the employee was offered a copy of this form, but refused to sign the Employee Counseling Record.

_____     _____
Supervisor Signature             Employee Name

ATTACH ADDITIONAL SHEETS AS REQUIRED

PER FORM 30
Revised 10/31/03

## EMPLOYEE COUNSELING RECORD

EMPLOYEE: *LARRY FITZPATRICK*    POSITION: *AUTO MECHANIC*

SUPERVISOR: *ROYCE ALBRIGHT*    DEPT: *FLEET MANAGEMENT*

DATE OF COUNSELING: *10/25/04*

REASON FOR COUNSELING: (Description of performance or conduct - give specific facts, background information dates and times.)

*INAPPROPRIATE BEHAVIOR DURING PARKING LOT INCIDENT (SEE ATTACHMENTS)*

*DRUG TEST ADMINISTERED — RESULTS NEGATIVE*

Employee's response:

*NONE*

If corrective action is required please specify the nature of the action to be taken by employee and the consequence of further infractions:

*I WARNED EMPLOYEE THAT THIS TYPE BEHAVIOR IS UNACCEPTABLE AND WILL NOT BE TOLERATED. FUTURE OCCURRENCES WILL BE MORE HARSHLY DEALT WITH.*

*Royce W. Albright*    *10/25/04*
_____    _____
Supervisor    Date

My signature indicates that the above matters were discussed with me and that I received a copy of this form.

_____    _____
Employee Signature    Date

This will certify that the employee was offered a copy of this form, but refused to sign the Employee Counseling Record.

*Royce W. Albright*    *LARRY FITZPATRICK*
_____    _____
Supervisor Signature    Employee Name

ATTACH ADDITIONAL SHEETS AS REQUIRED    *MEMBER REFUSED TO SIGN —*

*Ron Watson*

000027



000028

EXHIBIT

5800-2484





000029

EXHIBIT
24

5800-2484