IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY FITZPATRICK,        ) | |
|     Plaintiff,                      ) | |
|                                            ) | |
|     v.                                ) | Case No. 2:07-cv-528-WHA |
|                                            ) | |
| CITY OF MONTGOMERY,  ) | July 2, 2008 |
|     Defendant.                    ) | |

### ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on July 2, 2008, wherein the following proceedings were held and actions taken:

    **1.**  **PARTIES AND TRIAL COUNSEL:**

        Plaintiff:                    Larry Fitzpatrick

        Plaintiff's Counsel:       Joseph C. Guillot, Esquire
                                            McPhillips, Shinbaum & Gill, L.L.P
                                            516 South Perry
                                            Montgomery, Alabama 36104

        Defendant:               City of Montgomery

        Defendant's Counsel:      Wallace D. Mills, Esquire
                                            Attorney for the City of Montgomery

    **COUNSEL APPEARING AT PRETRIAL HEARING**:   Same as trial counsel.

    **2.**  **JURISDICTION AND VENUE:**

This court has jurisdiction of this case based on Title VII, 42 U.S.C. §2000e, et. seq.,  42 U.S.C. §1981, et. seq. and 28 U.S.C., 1331; 1343 (a), 3 and 4., as the Plaintiff is claiming race discrimination and retaliation in his employment.  Venue is proper in the United States District Court for the Middle District of Alabama.

    **3.**  **PLEADINGS:**   The following pleadings and amendments were allowed:

      A.      Plaintiff's Complaint

      B.      Defendant's Answer

4.    **CONTENTIONS OF THE PARTIES:**

    (a)    The Plaintiff contends he was terminated from his position as a mechanic with the Defendant City of Montgomery, on the basis of race and retaliation in violation of Title VII, 42 U.S.C., §2000e.

**Race Discrimination.** In order to prove race discrimination, using circumstantial evidence, the court applies the shifting burden framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir.1997). If the plaintiff meets that burden, then an inference arises that the challenged action was motivated by a discriminatory intent. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir.1989). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094-95. If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for unlawful discrimination. *Id*. at 255-56, 101 S.Ct. at 1095-96.

Mr. Fitzpatrick can show a *prima facie* case of race discrimination. He is African American and, therefore, a member of a protected class. He was qualified for the mechanic position as he had worked in the mechanic field for over thirty years and had served as a

2

mechanic for the City for six (6) years. He was treated less favorably than a similarly situated Caucasian mechanic, namely Johnny Ray Smith. Mr. Fitzpatrick was terminated as a result of alleged maintenance negligence, whereas a Mr. Smith, was not terminated when he committed similar maintenance infractions.

Plaintiff believes the Defendant will assert, as its legitimate non-discriminatory reasons, that it terminated Mr. Fitzpatrick due to three incidents of maintenance negligence. Defendant has already indicated that the Caucasian mechanic, Mr. Smith, did not commit the same or similar types of maintenance negligence as was alleged to be committed by Mr. Fitzpatrick.

Plaintiff can show that the reasons presented by the Defense are not the true reasons and that the true reason Mr. Fitzpatrick was terminated was due to his race and in retaliation for his prior EEO activity. Witnesses will testify that the maintenance negligence incidents either could not, or would not likely, have happened the way Defendant alleged. Witnesses will also testify that Caucasian mechanics, other than Mr. Smith, who committed similar maintenance infractions, were not disciplined or were disciplined less severely than were African American mechanics. Witnesses will also testify that the Defendant's agents knew or should have known that these incidents could not have occurred as alleged.

**Retaliation.** To establish a *prima facie* case of discrimination for an allegation of reprisal, Plaintiff must show: (1) that he engaged in prior protected activity, e.g., participated in a discrimination proceeding; (2) that the responsible management official was aware of the protected activity; (3) that he was subsequently disadvantaged by an adverse action; and, (4) that there is a causal link between the protected activity and the adverse employment action *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F. Supp. 318 , 324 (D. Mass), affirmed. 545 F.2d 222 (1st Cir. 1976)

3

As to the issue of retaliation, it is undisputed that Mr. Fitzpatrick filed claims of discrimination and retaliation against the Defendant. As a result of inequitable disciplinary treatment, Mr. Fitzpatrick filed a complaint with the Equal Employment Opportunity Commission on November 12, 2004. He filed another EEOC complaint on August 11, 2005, for disciplinary action alleging race discrimination and retaliation following a January 26, 2005, EEOC mediated settlement agreement. Obviously Mr. Fitzpatrick's supervisors were aware that he had filed EEOC complaints.

Following his August 11, 2005, EEOC complaint, the City of Montgomery issued a Notice of Proposed Removal on January 13, 2006, and he was subsequently removed on or about February 8, 2006. In its Notice, the City claimed two incidents that were committed before the EEOC mediated settlement agreement. Mr. Fitzpatrick believed the disciplinary action for those incidents had been dismissed. The City also claimed one additional maintenance infraction. Even though Mr. Fitzpatrick was able to show, through substantial evidence, that these incidents could not have occurred as alleged, the City terminated Mr. Fitzpatrick's employment. The actions taken against Mr. Fitzpatrick were in retaliation for his prior EEO activity.

Mechanics at the City Garage have testified that Mr. Fitzpatrick and others suffered retaliation during their employment and that race discrimination still exists at the City Garage.

As a proximate result of the race discrimination and retaliation Plaintiff has suffered at the hands of Defendant's agents in the City of Montgomery Garage, the Plaintiff has lost employment, including pay, insurance benefits and retirement benefits. He has also suffered mental anguish and emotional distress and is due compensatory damages.

(b) The defendant(s)

The City of Montgomery contends that a legitimate, non-discriminatory reason exists for any and all adverse employment actions. Specifically, the plaintiff's employment was terminated for having committed three separate acts of negligent maintenance within a twelve month period. On or about November 8, 2004, Fitzpatrick was charged with performing routine maintenance on a city van. When he finished and the van was driven off, one of the wheels began to wobble, almost coming off. Upon inspection, it appeared that the wheel lug nuts had not been replaced.

During the second week of December of 2004, the Plaintiff was assigned to replace a faulty fuel pump on a Police Department vehicle. That vehicle was returned to the garage several days after this work was performed because fuel was leaking onto the ground. Upon inspection, it was found that a critical hat-shaped seal had not been installed under the fuel pump. Consequently, fuel was leaking out of the gas tank in very close proximity to the exhaust pipe.

On October 17, 2005, Fitzpatrick was assigned to perform brake work on a police department patrol car, vehicle number 6210-2950. On October 25, 2005 that vehicle was returned to the garage by the police department because the left, rear brake caliper had come off the rotor and was hanging loose under the car. Upon inspection, it was determined that the two bolts meant to secure the caliper to the wheel assembly had not been installed. More specifically, metal shavings generated when the caliper worked itself loose were observed inside the holes in the caliper meant to accept the subject bolts.

Each of these instances of negligent maintenance posed serious risks of injury, both to the city employees operating the vehicles and to the public, not to mention the potential property damage caused by these lapses. The failure to install lug nuts created a serious risk that the

5

wheel would come off during operation and cause a potentially serious accident.  Likewise, the loss of the brake caliper not only caused the loss of braking ability on one wheel of a patrol car which is designed for the ability to be driven at excessive rates of speed in an emergency, but it threatened the loss of *all* braking ability.  When the vehicle was returned, the caliper was hanging by the hydraulic hose.  Had the caliper pulled loose from the hose, the loss of hydraulic pressure would have rendered the vehicle's brakes inoperative.

The failure to replace the hat seal under the fuel pump exposed raw gasoline to an area of the vehicle where it could easily have come into contact with a hot exhaust pipe, creating a substantial risk of fire.

The City of Montgomery further contends that the comparator named by plaintiff is not sufficiently similarly situated to support and indirect case of disparate treatment.  As discussed above, the plaintiff's employment was terminated after he either failed to install a critical part or improperly installed a critical part on at least three separate occasions within a twelve-month period.  Each of these failures created a significant safety hazard for both the vehicle operators and the public at large.  Johnny Ray Smith, on the other hand, has never failed to install a part correctly or neglected to install a part at all.  And he has never been found to have otherwise performed his work in such a way that a safety hazard was created.

Plaintiff has also alleged that he was treated disparately when he, and not Johnny Ray Smith was required to attend counseling after a verbal altercation between him and Mr. Smith.  To the contrary, Johnny Ray Smith was given the same requirement.  Smith was directed to undergo counseling at the City's expense just as Fitzpatrick was.  He too was directed, by way of the attached letter, to attend counseling, and he was told that failure to attend would result in disciplinary action against him.  Both Fitzpatrick and Smith were ordered to take a drug test and

6

to go to one session of counseling. Moreover, as is shown in the attached reprimands, both received a Form 30, Employee Counseling Record. Johnny Ray Smith signed his counseling form, but Fitzpatrick refused.

    **5.**    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

    a.    The Plaintiff was employed as a mechanic for the City of Montgomery for the six years prior to the termination of his employment.

    b.    The Plaintiff is African American.

    c    The Plaintiff was terminated from his position with the City on or about February 8, 2006.

It is **ORDERED** that:

6.    The jury selection and trial of this cause, which is to last 2-3 days, are set for August 11, 2008 at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

7.    A trial docket will be mailed to counsel for each party approximately four weeks prior to the start of the trial term;

8.    Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

9.    **IF REQUIRED**: Trial briefs are required to be filed by \_\_\_N/A\_\_\_.

    **IF NOT REQUIRED:** The parties in this case are not required to file trial briefs. However, if they wish to do so, their trial briefs shall be filed no later than July 21, 2008.

10.    All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #9) entered by the court on August 6, 2007;

7

11. All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the court.

DONE this 3rd day of July, 2008.

/s/ W. Harold Albritton
W. Harold Albritton
Senior U. S. District Judge